# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

QUICK CUISINE AG,

                              Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                              Defendants.

Case No.:  08-CV-1601
(Lynch, J.) (Francis, M.J.)

**NOTICE OF MOTION TO VACATE
DEFAULT JUDGMENT AS TO
DEFENDANTS UB2B, INC. AND
UNIVERSAL FOOD TRADING
PURSUANT TO F.R.C.P. 60(b) AND TO
DISMISS PLAINTIFF'S COMPLAINT
FOR LACK OF PERSONAL
JURISDICTION AS TO ALL
DEFENDANTS PURSUANT TO F.R.C.P.
12(b)(2)**

      **PLEASE TAKE NOTICE** that, Defendants, UB2B Inc., CMA Trading, Inc. and

Universal Food Trading,  (collectively "Defendants"), by and through their undersigned counsel

of record, will move this Honorable Court before United States Judge Gerard H. Lynch at the

United States Courthouse located at 500 Pearl Street, New York, New York, and at a time to be

fixed by the Court, for an Order Vacating Default Judgment entered against UB2B, Inc. and

Universal Food Trading Pursuant to F.R.C.P. 60(b), and to Dismiss Plaintiff's Complaint as to

all Defendants for Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2), and granting such

other and further relief as the Court may deem just and proper.

      **PLEASE TAKE FURTHER NOTICE** that, in support of this Motion, Defendants will

rely on the accompanying Memorandum of Law in Support of Motion and Certifications of

Fatima Siner, Ulises Sabato, Gus Eben and Michael J. Marotte, Esq.

{00982347.DOC;1 }

**PLEASE TAKE FURTHER NOTICE** that, Defendants request oral argument upon the

hearing of this Motion if it is opposed.

Dated:  Morristown, New Jersey　　　　　Respectfully submitted,
　　　　August 20, 2008　　　　　　　　　SCHENCK, PRICE, SMITH & KING, LLP


　　　　　　　　　　　　　　　　　　　　/s/ John P. Campbell (JC-8746)
　　　　　　　　　　　　　　　　　　　　John P. Campbell (JC-8746)
　　　　　　　　　　　　　　　　　　　　305 Broadway, Suite 900
　　　　　　　　　　　　　　　　　　　　New York, New York 10007
　　　　　　　　　　　　　　　　　　　　(212) 822-1494
　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants, UB2B Inc., CMA
　　　　　　　　　　　　　　　　　　　　Trading Inc., and Universal Food Trading



***To (Via Federal Express Overnight Delivery and Regular Mail):***

Laura H. Rubin, Esq.
Tannenbaum Dubin & Robinson, LLP
1140 Avenue of the Americas
New York, NY 10036
(212) 302-2900
*Attorneys for Plaintiff,*
*Quick Cuisine AG*



JAK #982347

{00982347.DOC;1}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

QUICK CUISINE AG,                          Case No.:  08-CV-1601
                                           (Lynch, J.) (Francis, M.J.)
                        Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                        Defendants.

———————————————————————

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT ENTERED AGAINST DEFENDANTS UB2B INC. AND UNIVERSAL FOOD TRADING AS PER F.R.C.P. 60(B)(4) OR, IN THE ALTERNATIVE, F.R.C.P. 60(B)(1) AND F.R.C.P. 60(B)(6), AND TO DISMISS PLAINTIFF'S COMPLAINT AS TO ALL DEFENDANTS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. 12(B)(2)**

SCHENCK, PRICE, SMITH & KING, LLP
John P. Campbell (JC-8746)
305 Broadway, Suite 900
New York, New York 10007
(212) 822-1494
Attorneys for Defendants, UB2B Inc., CMA
Trading Inc., and Universal Food Trading

{00982347.DOC.1}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ii

PRELIMINARY STATEMENT....................................... 1

STATEMENT OF FACTS.........................................3

LEGAL ARGUMENT .............................................7

POINT I

THE DEFAULT JUDGMENT ENTERED AGAINST UB2B AND
UNIVERSAL IS VOID PURSUANT TO F.R.C.P. 60(b)(4)
BECAUSE IT WAS OBTAINED IN THE ABSENCE OF IN *PERSONAM
JURISDICTION* OVER THESE DEFENDANTS .........................7

POINT II

DEFAULT JUDGMENT ENTERED AGAINST UB2B AND UNIVERSAL IN
FAVOR OF PLAINTIFF MUST BE VACATED PURSUANT TO
F.R.C.P. 60(B)(1) .........................................14

POINT III

DEFAULT JUDGMENT ENTERED AGAINST UB2B AND UNIVERSAL IN
FAVOR OF PLAINTIFF MUST BE VACATED PURSUANT TO
F.R.C.P. 60(B)(6) .........................................18

POINT IV

PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS TO ALL
DEFENDANTS PURSUANT TO F.R.C.P. 12(B)(2) BECAUSE THIS
COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE
DEFENDANTS ...............................................20

CONCLUSION................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>A.I. Trade Fin., Inc. v. Petra Bank</u>, 989 <u>F.2d</u> 76, 79-80 (2d Cir. 1993)........................................ 20

<u>Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.</u>, 8 <u>F. Supp. 2d</u> 372, 375 (S.D.N.Y. 1998) ................................................................................................................................. 7

<u>Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.</u>, 8 <u>F. Supp. 2d</u> 372, 375 (S.D.N.Y. 1998) (citations omitted)............................................................................................................. 10

<u>Anello v. Barry</u>, 149 <u>A.D.2d</u>  640, 540 <u>N.Y.S.2d</u> 460 (2nd Dept. 1989)........................................ 8

<u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843 <u>F.2d</u> 808, 812 (4th Cir. 1988) ................................................................................................................................. 16

<u>Ball v. Metallurgie Hoboken-Overpelt, S.A.</u>, 902 <u>F.2d</u> 194, 197 (2d Cir. 1990) (alteration in original)). ................................................................................................................................. 20

<u>Beller & Keller v. Tyler</u>, 120 <u>F.3d</u> 21 ....................................................................................... 7

<u>Bensusan Rest. Corp. v. King</u>, 126 <u>F.3d</u> 25, 27 (2d Cir. 1997))........................................................ 8

<u>Bensusan</u>, 126 <u>F.3d</u> at 27 (citing <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 <u>F.3d</u> 560, 567 (2d Cir. 1996)) ................................................................................................................... 8

<u>Bituminous Cas. Corp. v. Garcia</u>, 223 <u>F.R.D.</u> 308 (N.D. Tex. 2004)........................................... 15

<u>Bryant v. Finnish Natl. Airline</u>, 15 <u>N.Y.2d</u> 426, 432; <u>see generally</u>, Siegel, NY Prac §§ 82,83.... 9

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................................................ 10

<u>Calder v. Jones</u>, 465 <u>U.S.</u> 783, 788 (1984) (quoting <u>Int'l Shoe</u>, 326 U.S. at 316 (1945))............ 10

<u>Central Operating Co. v. Utility Workers of America</u>, 491 <u>F.2d</u> 245 (4th Cir. 1974)................... 16

<u>China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash</u>, No. 96 Civ. 9553, 1999 <u>U.S. Dist. LEXIS</u> 2674, 1999 <u>W.L.</u> 126921, at *3 (S.D.N.Y. Mar. 9, 1999)............................................. 10

China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash, No. 96 Civ. 9553, 1999 U.S. Dist.

    LEXIS 2674, 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (citation omitted). ................. 8

Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995). ............................................................................. 7

Covington Industries, Inc. v. Resintex A.G., 629 F.2d 730, 732 n.3 (2d Cir. 1980) ..................... 7

Delagi v. Volkswagenwerk AG, 29 N.Y.2d 426, 430-431. ............................................................ 8

DeMartino v. Rivera, 148 A.D.2d 568, 539 N.Y.S.2d 38 (2nd Dept. 1989). ............................... 17

El Cid, Ltd. v New Jersey Zinc Co., 444 F. Supp. 845 (S.D.N.Y. 1977) ...................................... 12

Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3rd Cir. 1982). ..................................... 14, 18

First Cap. Asset Mgmt., Inc. v. Brickellbush. Inc., 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002)

    (quoting Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)). ...................... 9

Hanson v. Denckla, 357 U.S. 235 (1958) ................................................................................... 10

Hanson v. Denckla, 357 U.S. 235, 253 (1958) ........................................................................... 10

Hibernia Nat'l Bank v. Administration Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir.

    1985) ..................................................................................................................................... 14

Insurance Co. of North America v. Morrison, 154 F.R.D. 278, 280 (M.D. Fla. 1994) ................ 14

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945). ................................................................. 1, 10

International Shoe Co. v. Washington, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945). ............. 9

Laguna Royalty Co. v. Marsh, 350 F.2d 817, 823 (5th Cir. 1965). ............................................. 14

Landoil Resources Corp. v. Alexander & Alexander Services, Inc. (1990), 77 N.Y.2d 28, 563

    N.Y.S.2d 739, 565 N.E.2d 488 summarized New York law with respect to jurisdiction over

    foreign corporations pursuant to CPLR 301. ............................................................................ 8

Laufer v. Ostrow, 55 NY2d 305, 309-310; Frummer v. Hilton Hotels Intl., 19 NY2d 53, 536; .... 8

Mellon Bank (East) P.S.F.S. v. Farino, 960 F.2d 1217 (3d Cir. 1992) ........................................ 10

Mellon Bank (East) P.S.F.S. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) ............................... 10

Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) ........................ 20

Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) ....................... 20

Mirza v. Barnhart, 87 Soc. Sec. Rep. Serv. 467 (N.D. Ill. 2003) ................................................. 18

Orix Fin. Servs., Inc. v. Kielbasa, No. 01 Civ. 1789, 2007 U.S. Dist. LEXIS 88339, 2007 WL
    4258207, ........................................................................................................................................ 7

Patterson by Patterson v. FBI, 893 F.2d 595, 603–04 (3rd Cir. 1990). ......................................... 10

Schram v. O'Connor, 2 F.R.D. 192 (D.C. Mich. 1941) ................................................................ 14

Simonson v. International Bank, 14 NY2d 281, 285; accord, ......................................................... 8

Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267; see also Laufer v. Ostrow, 55 N.Y.2d 305,
    310, supra. ..................................................................................................................................... 9

Terrydale Liquidating Trust v. Gramlich, 549 F.Supp. 529 (S.D.N.Y. 1982) ............................. 11

Tozer v. Charles A. Krause Milling Co., 189 F.2d. 242 (3rd Cir. 1951) ....................................... 15

Uni-Petrol Gesellschaft v. MT Lotus Maru, 607 F.Supp. 108 (S.D.N.Y. 1985). ....................... 11

United Coin Meter v. Seaboard Coastline R.R., 705 F.2d 839, 845 (6th Cir. 1983) .................... 14

United States v. Assad, 179 F.R.D. 170, 172 (M.D.N.C. 1998) (emphasis supplied) .................. 16

United States v. Williams, 109 F.Supp. 456 (D.C. Ark. 1952) ............................................... passim

Vela v. Western Elec. Co., 709 F.2d 375, 376 (5th Cir. 1983) ....................................................... 14

Warner Bros. Entm't Inc. v. Ideal World Direct, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007) ....... 8

Woodbury v. Sears, Roebuck & Co., 152 F.R.D. 229 (M.D. Fla. 1993) ...................................... 14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .............................................. 10

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) .................................... 10

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Defendants, UB2B, Inc. ("UB2B"), Universal Food Trading ("Universal") and CMA Trading, Inc. ("CMA Trading") (collectively "Defendants") in support of their Motion to Vacate Default Judgment entered on May 27, 2008 against UB2B and Universal, and to dismiss Plaintiff's Complaint for lack of personal jurisdiction as to all defendants pursuant to F.R.C.P. 12(B)(2).

This genesis of this case arises from a contract dispute involving the delivery of defective goods by the Plaintiff, Quick Cuisine AG. On or about February 13, 2008, Plaintiff Quick Cuisine AG ("Quick Cuisine") filed a Complaint to collect for amounts allegedly due from Defendants. Due to defective service and circumstances beyond their control, Defendants could not respond to the Complaint or the Order to Show Cause for Default Judgment in a timely manner and plaintiff rushed to obtain a Default Judgment.

This instant motion seeks to vacate the Default Judgment pursuant to relief granted by F.R.C.P. 60(b)(4), or alternatively, F.R.C.P. 60(b)(1) and 60(b)(6). Defendants are entitled to the relief granted by F.R.C.P. 60(b)(4) as this action was inappropriately filed in New York in that the State of New York does not have personal jurisdiction over the Defendants. It is well established that the relief granted by Rule 60(b)(4) is mandatory and a meritorious defense is *not* necessary as on motions made under other 60(b) subsections. Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (citations omitted). Neither Defendants nor their transactions with plaintiff have any connections whatsoever to the State of New York. Subjecting Defendants to personal jurisdiction in New York under these circumstances would offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Furthermore, Defendants are entitled to relief under F.R.C.P. 60(b)(1), or alternatively, 60(b)(6), as their inability to respond to Plaintiff's Complaint and subsequent Order to Show Cause resulting from Plaintiff's defective service of the Complaint and Order to Show Cause constitutes excusable neglect. Defendants can also demonstrate meritorious defenses to this action, and an absence of prejudice to plaintiff if default is vacated.

Finally, Plaintiff's Complaint must be dismissed as to all defendants pursuant to F.R.C.P. 12(b)(2) as this Court lacks personal jurisdiction over Defendants in this case.

## STATEMENT OF FACTS

This action arises from a contract dispute involving the delivery of defective goods by the Plaintiff, Quick Cuisine AG ("Quick Cuisine"). Defendants, UB2B, Inc. ("UB2B") and Universal Food Trading ("Universal") are based in Carlstadt, New Jersey. See Certification of Ulises Sabato, ¶2. ("Sabato Cert."); see also Certification of Fatima Siner, ¶3 ("Siner Cert."). Defendant CMA Trading, Inc. ("CMA Trading") maintains its principal place of business in Emerson, New Jersey. See Certification of Gus Eben, ¶2. (hereinafter "Eben Cert."). UB2B, Universal and CMA Trading operate entirely in New Jersey and have no agents, employees, property, showrooms, telephone numbers or bank accounts in the State of New York. See Sabato Cert., ¶¶4-7; Siner Cert., ¶¶5-8; Eben Cert. ¶¶4-5. The defendants are engaged in the business of distributing and selling merchandise, including food, to wholesalers and retailers. See Sabato Cert., ¶3; Siner Cert., ¶4; Eben Cert. ¶3. The Defendants do not regularly solicit business in New York. See Sabato Cert., ¶6; Siner Cert., ¶7; Eben Cert. ¶6. Plaintiff, Quick Cuisine AG, is a Swiss Corporation based out of Rotkreuz, Switzerland, and does not maintain offices in the United States. See Plaintiff's Complaint, ¶2, annexed to Certification of Michael J. Marotte, Esq. as **Exhibit 1** (hereinafter "Complaint").

Early in 2007, UB2B engaged in a series of discussions with representatives from Universal, CMA Trading and Plaintiff Quick Cuisine, for the purpose of negotiating a deal for the sale of self-heating meals (the "goods") by Quick Cuisine to UB2B, Universal and CMA Trading. UB2B, Universal and CMA Trading were operating under a joint venture agreement. Essentially all of the negotiations between the parties took place via e-mail or by telephone between New Jersey and Switzerland. See Sabato Cert., ¶¶10-13; Siner Cert., ¶¶11-15; Eben Cert. ¶8-10. Business meetings conducted in person were held at the headquarters of UB2B in

Carlstadt, New Jersey with the exception of one meeting attended by Ulises Sabato and a Quick Cuisine representative in Lille, France.  Sabato Cert., ¶11, 13; Siner Cert., ¶14; Eben Cert., ¶¶11-12.  Mr. Sabato of Universal visited one of Plaintiff's packing facilities in Lille, France.  See Sabato Cert., ¶13.  No business meeting between the parties occurred in New York.  See Sabato Cert., ¶12; Siner Cert., ¶15; Eben Cert., ¶13.  During negotiations, the only event that took place in New York was a social dinner engagement attended by Gus Eben of CMA Trading and Nicky Sevim of Quick Cuisine at a restaurant located near Mr. Sevim's New York City hotel.  See Eben Cert., ¶14-15.  A third individual by the name of Stephen Server was also present at dinner.  This individual is not any employee or agent of any of the defendants.  Aside from this dinner engagement, no other activity was conducted in New York that may be characterized as a "business transaction."

As a result of the negotiations, Defendants placed two orders with Quick Cuisine for the delivery of over 50,000 self-heating meals.  See Complaint, annexed to Marotte Cert. as **Exhibit 1**.  The goods were unique in that they contained a mechanism allowing for them to heat without the use of any external source.  See Complaint, annexed to Marotte Cert. as **Exhibit 1**.

Upon delivery of the first order, Defendants quickly learned that many of the goods were defective.  Plainly speaking, the goods simply failed to heat on their own and were therefore, devoid of the feature for which they were purchased.  Nevertheless, Defendants paid for the entire order.  See Complaint, ¶14.  When the second order was delivered, the result was the identical.  A significant number of goods failed to heat up, thereby rendering them defective.  Several rounds of correspondence transpired between the parties to no avail.  Due to the patently defective nature of the goods, Defendants did not pay for the second order.

On or about February 13, 2008, Plaintiff Quick Cuisine filed suit against CMA Trading,

UB2B, and Universal in the United States District Court for the Southern District of New York under docket No. 08 Civ. 1601.  See Complaint, annexed to Marotte Cert. as **Exhibit 1**.  Plaintiff sought to recover the amount of $89,686.13 alleged due from Defendants for goods delivered by Quick Cuisine.  Id. at ¶26.  Although an Affidavit of Service of the Complaint was filed, Universal has no record of being served with Plaintiff's Complaint.  See Sabato Cert., ¶14. CMA Trading was not served.  No Affidavit of Service was ever filed with respect to CMA Trading.

Subsequently, Plaintiff filed an Order to Show Cause on May 1, 2008, seeking a default judgment in favor of Plaintiff.  See Order to Show Cause, annexed Cert. as **Exhibit 2**.  This filing was never served upon any of the Defendants.  See Sabato Cert., ¶15; Siner Cert., ¶16.  In fact, no Affidavit of Service for the Order to Show Cause was ever filed with the Court. Defendants never received this considerably important pleading.  Id.

On May 22, 2008, Plaintiff's counsel submitted an affidavit for Judgment by Default in the amount of $89,686.13 along with interest at 9% from September of 2007 in the amount of $5,372.73 and costs in the amount of $625.00 for the purchase of a civil action number and service on the Defendants.  See Affidavit for Judgment by Default, annexed Marotte Cert. as **Exhibit 3**.  The affidavit, like the Order to Show Cause, was not served on Defendants.  See Sabato Cert., ¶16; Siner Cert., ¶17.

Only a few days later, on May 27, 2008, The Honorable Gerard E. Lynch U.S.D.J. granted default judgment in the favor of Plaintiff for the total amount of $95,708.86, which included the recovery amount plus interest and costs.  Upon learning of the default judgment, Defendants immediately began the search for counsel to address this claim.  See Sabato Cert., ¶18; Siner Cert., ¶19.  Defendants' counsel contacted Plaintiff's counsel and requested Plaintiff's consent to vacate the default judgment.  See Certification of Michael J. Marotte, at ¶¶2-3.

Plaintiff's counsel denied this request. Defendants' instant motion seeks to vacate the default judgment entered against UB2B and Universal pursuant to F.R.C.P. 60(b)(4), or alternatively, 60(b)(1) and 60(b)(6). All defendants move to dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction.

**LEGAL ARGUMENT**

**POINT I**

**THE DEFAULT JUDGMENT ENTERED AGAINST UB2B AND UNIVERSAL IS VOID PURSUANT TO F.R.C.P. 60(b)(4) BECAUSE IT WAS OBTAINED IN THE ABSENCE OF IN *PERSONAM JURISDICTION* OVER THESE DEFENDANTS**

A default judgment is "the most severe sanction which the court may apply." Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995). "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." See Fed. R. Civ. P. 55(c). "A motion predicated on subsection four [of Rule 60(b)] is unique . . . in that relief is not discretionary *and a meritorious defense is not necessary* as on motions made pursuant to other 60(b) subsections." Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (citing Covington Industries, Inc. v. Resintex A.G., 629 F.2d 730, 732 n.3 (2d Cir. 1980) (emphasis added)). F.R.C.P. 60(b)(4) states, in relevant part, that

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . . .
>
> (4)    the judgment is void;
> . . . .

See F.R.C.P. 60(b)(4). A Rule 60(b)(4) motion must be made "within a reasonable time" after entry of the judgment. Fed. R. Civ. P. 60(b)(4); see also Beller & Keller v. Tyler, 120 F.3d 21, 24 (2d Cir. 1997); Orix Fin. Servs., Inc. v. Kielbasa, No. 01 Civ. 1789, 2007 U.S. Dist. LEXIS 88339, 2007 WL 4258207, at *2 (S.D.N.Y. Dec. 3, 2007).

"A judgment obtained in the absence of *in personam* jurisdiction is void, and a court must vacate such a judgment." China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash, No. 96 Civ. 9553, 1999 U.S. Dist. LEXIS 2674, 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (citation omitted). Moreover, "It is well settled that where service of process has been improperly effected, any resulting default judgment is a nullity." DeMartino v. Rivera, 148 A.D.2d 568, 539 N.Y.S.2d 38 (2nd Dept. 1989). Where improper service occurs, the Court never had personal jurisdiction over the Defendants, and a default judgment must be unconditionally vacated. Anello v. Barry, 149 A.D.2d 640, 540 N.Y.S.2d 460 (2nd Dept. 1989).

"This Court must look to the law of New York to determine whether it has jurisdiction over a non-domiciliary defendant." Warner Bros. Entm't Inc. v. Ideal World Direct, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007) (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)). "If the exercise of jurisdiction is appropriate under that [New York] statute, the court then must decide whether such exercise comports with the requisites of due process." Bensusan, 126 F.3d at 27 (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)). The plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metro. Life Ins., 84 F.3d at 566.

## A. CPLR 301 (Jurisdiction Over Foreign Corporations)

The Court of Appeals in Landoil Resources Corp. v. Alexander & Alexander Services, Inc. (1990), 77 N.Y.2d 28, 563 N.Y.S.2d 739, 565 N.E.2d 488 summarized New York law with respect to jurisdiction over foreign corporations pursuant to CPLR 301.

> A foreign corporation is amenable to suit in New York courts under CPLR 301 if it has engaged in such a continuous and systematic course of "doing business" here that a finding of its "presence" in this jurisdiction is warranted. Laufer v. Ostrow, 55 NY2d 305, 309-310; Frummer v. Hilton Hotels Intl., 19 NY2d 53, 536; Simonson v. International Bank, 14 NY2d 281, 285; accord, Delagi v. Volkswagenwerk AG, 29 N.Y.2d 426, 430-431. The test for "doing

business" is a "simple [and] pragmatic one," which varies in its
application depending on the particular facts of each case. <u>See</u>
<u>Bryant v. Finnish Natl. Airline</u>, 15 <u>N.Y.2d</u> 426, 432; <u>see generally</u>,
Siegel, NY Prac §§ 82,83. The court must be able to say from facts
that the corporation is "present" in the State "not occasionally or
casually, but with a fair measure of permanence and continuity."
<u>Tauza v. Susquehanna Coal Co.</u>, 220 <u>N.Y.</u> 259, 267; <u>see also</u> <u>Laufer</u>
<u>v. Ostrow</u>, 55 <u>N.Y.2d</u> 305, 310, supra.

It is when the quality and nature of the corporation's contacts with the State are sufficient to
make it reasonable and just according to traditional motions of fair play and substantial justice
that it be required to defend the action here. <u>International Shoe Co. v. Washington</u>, 326 <u>U.S.</u>
310, 90 <u>L.Ed.</u> 95, 66 <u>S.Ct.</u> 154 (1945).

None of the Defendants are "doing business" in New York sufficient to be "present" here
within the meaning of CPLR §301. The Defendants have no place of business in New York,
telephone number, warehouse, showroom, employees or other connections with New York. The
Defendants do not regularly solicit business in New York, and have no agents, bank accounts or
property in the State. <u>See</u> Sabato Cert., ¶¶ 4-7; Siner Cert., ¶¶ 5-8; Eben Cert., ¶¶4-7. Plaintiff's
Complaint does not allege any New York State activity of any of the Defendants that is
"sufficiently 'continuous, permanent, and substantial' to subject [Defendants] to jurisdiction
under [CPLR section] 301." <u>First Cap. Asset Mgmt., Inc. v. Brickellbush. Inc.</u>, 218 <u>F. Supp. 2d</u>
369, 393 (S.D.N.Y. 2002) (quoting <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 <u>F.3d</u> 88, 95 (2d
Cir. 2000)). The vast majority of business contact between the parties was conducted via e-mails
and by telephone between New Jersey domiciliaries and a Switzerland company that has no
presence in the United States of America.

Accordingly, the default judgment entered against the Defendants is void, and the court
must vacate such a judgment irrespective of a meritorious defense. <u>China Mariners' Assurance</u>
<u>Corp. v. M.T. W.M. Vacy Ash</u>, No. 96 Civ. 9553, 1999 <u>U.S. Dist. LEXIS</u> 2674, 1999 <u>W.L</u>

126921, at *3 (S.D.N.Y. Mar. 9, 1999) (citation omitted); see also Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (citations omitted).

**B.    CPLR 302 (Long Arm Statute)**

A court may only exercise personal jurisdiction over a defendant if the defendant has "[c]ertain minimum contacts… such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Calder v. Jones, 465 U.S. 783, 788 (1984) (quoting Int'l Shoe, 326 U.S. at 316 (1945)). Those must arise from "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). A defendant must reasonably anticipate being "haled into court" in the forum state, or jurisdiction will fail. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The plaintiff bears the burden of proving that the defendant has sufficient contacts with the forum state to justify asserting personal jurisdiction. Mellon Bank (East) P.S.F.S. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) ("the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper"). The plaintiff must demonstrate contacts "with reasonable particularity," not just with general averments and vague assertions (as found in plaintiffs' Complaint). Patterson by Patterson v. FBI, 893 F.2d 595, 603 04 (3rd Cir. 1990).

New York's long arm statute does not permit exercise of personal jurisdiction as far as may be constitutionally permitted.  Interface Biomedical Lab. Corp., 600 F.Supp. 731 (E.D.N.Y. 1985).  Rather, each court must determine the issue of personal jurisdiction individually for each cause of action asserted in the complaint.  Id.  C.P.L.R. §302(a)(1) provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or its executor or administrator, who in person or through an agent: (1) transacts any

business within the state or contracts anywhere to supply goods or services in the state.

The limited parameters of the long arm statute were highlighted in <u>Terrydale Liquidating Trust v. Gramlich</u>, 549 <u>F.Supp.</u> 529 (S.D.N.Y. 1982). In <u>Terrydale</u>, the Plaintiff sought to base jurisdiction over defendant pursuant to <u>C.P.L.R.</u> §302(a)(1). The complaint enumerated several mail and telephone contacts that the defendant had with New York. <u>Id.</u> at 531. Defendant in that case retained New York counsel to advise it about the deal and even was party to a meeting in New York. Despite these contacts, this Court found that plaintiff failed to illustrate that their cause of action resulted from a transaction of business in New York. <u>Id.</u>

The limited application of <u>C.P.L.R.</u> §302(a)(1) specifically requires that the cause of action stem from the business transacted. <u>Uni-Petrol Gesellschaft v. MT Lotus Maru</u>, 607 <u>F.Supp.</u> 108 (S.D.N.Y. 1985). In <u>Uni-Petrol</u>, the plaintiff contended that at the time that defendant was shipping oil for Uni-Petrol, defendant made use of a New York broker to charter the required boat. <u>Id.</u> at 110. Moreover, defendant in that case entered charter agreements providing for receipt of payment in New York as well as resolution of disputes by arbitrations in New York. <u>Id.</u> In light of these factors, this Court found that these contacts were insufficient to satisfy the requirements of due process and that defendant did not "purposely avail itself of the privilege of conducting activities within." <u>Id.</u> Furthermore, these connections were not enough to constitute the transaction of business. <u>Id.</u>

Plaintiff's Complaint alleges that "a series of meetings" in New York between the parties in which two orders were allegedly placed with Plaintiff as the basis for claiming personal jurisdiction over the Defendants in this forum. <u>See</u> Complaint, ¶13. Contrary to these allegations, there had been one "meeting" in New York. The meeting can more fairly be described as a social engagement rather than a business meeting. Gus Eben of CMA Trading

took Nicky Sevim of Quick Cuisine AG to dinner in New York.  See Sabato Cert., ¶15.  Other

than dinner in New York, no other activities were conducted in New York that may be fairly

characterized as a "business transaction."  The only business meetings between the parties were

held in the office/warehouse of UB2B located in Carlstadt, New Jersey.  Significantly, neither a

representative of Universal Food Trading nor a representative of UB2B ever met Nicky Sevim or

any other representative of Quick Cuisine in New York.  See Sabato Cert., ¶13; Siner Cert., ¶9-

10.  Mr. Ulises Sabato of Universal Food Trading did, however, meet a representative of Quick

Cuisine on a visit to one of Quick Cuisine's packing facilities in Lille, France. See Sabato Cert.,

¶13. Nevertheless, Mr. Sabato's one meeting in Lille, France is woefully inadequate to confer

personal jurisdiction over Universal Food Trading in New York.

As to CMA Trading, a single "meeting" in New York - where none of the parties

maintain offices – hardly amounts to purposeful activity in the forum state particularly where, as

here, the "meeting" amounted to nothing more than a social engagement in New York City.

Plaintiff would be hard pressed to argue that dinner in New York is sufficient to constitute

conscious effort to obtain the protection or benefits of New York law concerning any aspect of

plaintiff's stated causes of action.  See El Cid, Ltd. v New Jersey Zinc Co., 444 F. Supp. 845

(S.D.N.Y. 1977) (stating that "[t]o determine whether the type of activity conducted within New

York is sufficient to constitute "transacting business", the facts of each case must be examined to

determine whether looking at the totality of the defendant's activities within the forum, the

defendant has engaged in purposeful activity by which he has invoked the benefits and

protections of New York law).

The vast majority of discussions between the parties took place both before and after the

"meeting" in New York.   Virtually all of negotiations between the parties were conducted via e-

mail or by telephone between New Jersey and Switzerland.    All in-person meetings were conducted in New Jersey with the exception of the Lille, France visit by Mr. Sabato.    The Defendants, all New Jersey domiciliaries, never anticipated or contemplated that a single "meeting" in New York would embroil them in litigation in New York with a Switzerland based company.

The evidence is overwhelming that the parties intended New Jersey - not New York - to be the forum for resolving disputes.    The Letter of Intent, which the parties began negotiating but did not execute, evidences the intent of the parties to make New Jersey the exclusive venue to resolve disputes arising from the agreement to distribute Quick Cuisine's products.    See Letter of Intent, annexed to Marotte Cert. as **Exhibit 4**.    The Letter of Intent contains a forum selection clause that designates New Jersey as the venue for resolving all contract disputes to the exclusion all other venues and all other jurisdictions.    Id. at ¶10.    Paragraph 10 states, in relevant part, that:

> Any controversy or claim arising out of or relating to this Letter of Intent or the Distributorship Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association, by one Arbitrator, in the City of Hackensack in the State of New Jersey, and shall be enforceable in any court having competent jurisdiction.

Id. (emphasis added).    Accordingly, New York's long arm statute does not permit exercise of personal jurisdiction of the Defendants.

## POINT II

### DEFAULT JUDGMENT ENTERED AGAINST UB2B AND UNIVERSAL IN FAVOR OF PLAINTIFF MUST BE VACATED PURSUANT TO F.R.C.P. 60(B)(1)

Alternatively, Defendants move to vacate the default judgment in favor of plaintiff pursuant to Fed. R. Civ. P. 60(b)(1). F.R.C.P. 60(b)(1) provides that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for…mistake, inadvertence, surprise, or excusable neglect." Courts are to construe this rule liberally to ensure that a doubtful case may be resolved upon its merits. Hibernia Nat'l Bank v. Administration Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985); see also Laguna Royalty Co. v. Marsh, 350 F.2d 817, 823 (5th Cir. 1965). Furthermore, the decision to grant or deny relief under 60(b)(1) is within sound discretion of the trial court. Hibernia, at 1279; see also Vela v. Western Elec. Co., 709 F.2d 375, 376 (5th Cir. 1983).

"In ruling on a motion to set aside a default judgment under 60(b)(1), the courts generally look at three factors: (1) the extent of the prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of defendant's conduct." Hibernia, at 1280; see also United Coin Meter v. Seaboard Coastline R.R., 705 F.2d 839, 845 (6th Cir. 1983); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3rd Cir. 1982).

Notably, a finding of excusable neglect is within the discretion of the court. Schram v. O'Connor, 2 F.R.D. 192 (D.C. Mich. 1941). Generally, good cause and excusable neglect are treated alike under the excusable neglect standard of F.R.C.P. 60(b). Insurance Co. of North America v. Morrison, 154 F.R.D. 278, 280 (M.D. Fla. 1994); see also Woodbury v. Sears, Roebuck & Co., 152 F.R.D. 229 (M.D. Fla. 1993). A party's failure to appear for a lack of notice is a prime example of excusable neglect. In a case involving a defendant's failure to

appear for a lack of notice, the Third Circuit found that a defendant's motion to set aside a default judgment for lack of notice constitutes excusable neglect even when the defendant itself failed to notify the secretary of state of the change in address of its registered agent. Tozer v. Charles A. Krause Milling Co., 189 F.2d. 242 (3rd Cir. 1951). In another case addressing a default judgment resulting from lack of notice, a court granted relief to a party as the default judgment took place absent any notice to the moving party. Bituminous Cas. Corp. v. Garcia, 223 F.R.D. 308 (N.D. Tex. 2004). The court found that the moving party was without any negligence or carelessness. Id.

The facts of the instant case involving a default judgment are precisely the type warranting relief under F.R.C.P. 60(b)(1). As a preliminary matter, vacation of the default judgment against UB2B and Universal presents absolutely no prejudice to plaintiff. The dispute at hand requires a proper adjudication of the issues at bar. The underlying case involves a breach of contract and warranty for the sale of goods. The Complaint makes evident that the issue of breach of contract exists. See Complaint. An appearance by Defendants in defense of this action is just, and hardly prejudicial, particularly when default judgment was entered less than three (3) months ago.

Equally important are the merits of Defendants' asserted defenses. The facts illustrate an issue as to the breach of contract on behalf of plaintiff. In this case, a contract between plaintiff and Defendants required that plaintiff provide significant goods to defendants. See Exhibits B and C, annexed to Complaint attached as **Exhibit 1** to Marotte Certification. Although Plaintiff claims a breach of the contract by Defendants for failure to pay for the goods, Defendants contend that the goods provided in this case were defective and therefore, plaintiff failed to fulfill its contractual obligations. The goods at issue in this case are self-heating ready to eat meals

which are sold under various trade names, including "Quick Cuisine" and "Hot Box."  See Complaint, Exhibit A.  The goods, if operating correctly, contain technology allowing them to heat independent of any external heat source.  Defendants provide proofs indicating that many of the meals they received from plaintiff were defective for failing to heat up.  Buttressing this contention is the expert report of Professor Joan Llorens Llacuna.  See Llacuna Report, annexed Marotte Cert. as **Exhibit 5**.  After examining multiple cans of the meals developed by Quick Cuisine, Professor Llacuna concluded that the products "do not meet the conditions for the correct process of auto heating mixing with water."  See Llacuna Report.  Furthermore, the expert determined that the auto-heating capacity of the product is "enormously limited."  Id.

Courts have determined that a moving party is <u>not</u> required to establish a meritorious defense by a preponderance of the evidence.  United States v. Assad, 179 F.R.D. 170, 172 (M.D.N.C. 1998) (emphasis supplied); see also Central Operating Co. v. Utility Workers of America, 491 F.2d 245 (4th Cir. 1974).  Rather, the moving party is only required to make a "proffer of evidence which would permit a finding in its favor."  Assad, at 172; see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988). In the instant case, not only is the Defendants' testimony enough to potentially permit a finding in its favor, Defendants provide an expert report essentially verifying their allegations.  These proofs alone fulfill the 60(b)(1) requirement of a meritorious defense.

Finally, Defendants are absent any culpability in the default of this case.  Plaintiff failed to serve Defendants with the notice of default judgment, Court Orders, Order to Show Cause, and as to some defendants the Complaint in this matter.  See Defendants' Certifications.  Failing to appear due to a lack of notice is far from culpable conduct on the part of Defendants.  A fundamental premise of our legal system is to allow a party to an action the right to appear in

Court and defend itself, herself or himself.  This is known as Due Process of law.  Here, the Defendants were not served with the signed Order to Show Cause and were denied Due Process because they were not given proper notice of the application before the Court.  This Court should vacate the default Judgment because Defendants were not served and the Court therefore lacked personal jurisdiction.  C.P.L.R. § 5015(a)(4) states that a party can be granted relief from a Judgment or Order when the Court lacked jurisdiction.  "It is well settled that where service of process has been improperly effected, any resulting default judgment is a nullity."  DeMartino v. Rivera, 148 A.D.2d 568, 539 N.Y.S.2d 38 (2nd Dept. 1989).  Where improper service occurs, the Court never had personal jurisdiction over the defendant.  Id.

   For these reasons, Defendants' motion to vacate default judgment for excusable neglect should be granted.

## POINT III

### DEFAULT JUDGMENT ENTERED AGAINST UB2B AND UNIVERSAL IN FAVOR OF PLAINTIFF MUST BE VACATED PURSUANT TO F.R.C.P. 60(B)(6)

Alternatively, Defendants move to vacate the default judgment pursuant to Fed. R. Civ. P. 60(b)(6). F.R.C.P. 60(b)(6) provides that: "On motion and upon such terms as are just, the court may relieve a party …from a final judgment…[for] any reason justifying relief from the operation of the judgment." The Third Circuit has held that this rule "should be given a liberal construction [and] [a]ny doubt should be resolved in favor of the petition to set aside judgment so that cases may be decided on the merits." Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3rd Cir. 1982). Courts are authorized to set aside judgment under "other reasons" clause when justice calls for the judgment to be set aside. United States v. Williams, 109 F.Supp. 456 (D.C. Ark. 1952). In a sense, Rule 60(b)(6) is a catchall provision providing relief when the grounds do not fit under any of the other sections of F.R.C.P. 60(b). Mirza v. Barnhart, 87 Soc. Sec. Rep. Serv. 467 (N.D. Ill. 2003).

Ultimately, the standard for invoking relief under 60(b)(6) is identical to relief under 60(b)(1) which require evaluation of the following factors: (1) the extent of the prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of defendant's conduct." Hibernia, at 1280. As discussed above, Defendants fulfill each of these requirements to the entirety. Defendants' were subject to a default judgment for no other reason than a lack of notice. Defendants did not receive the Order to Show Cause or Complaint in this case. Justice requires for this judgment to be set aside. Defendants have illustrated the lack of any prejudice to plaintiff, the significant merit of their defenses, as well as the absence of any culpability on

their behalf.  For these reasons, Defendants' motion to vacate the default judgment pursuant to

<u>F.R.C.P.</u> 60(b)(6) must be granted.

## POINT IV

### PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS TO ALL DEFENDANTS PURSUANT TO F.R.C.P. 12(B)(2) BECAUSE THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS

Defendants moves to dismiss the plaintiff's Complaint in its entirety per Fed. R. Civ. P. 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citation omitted). "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993) (citations omitted). Where "the parties have conducted extensive discovery regarding the defendant[s'] contacts with the forum state, but no evidentiary hearing has been held . . . 'the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant[s].'" Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (alteration in original)).

This Court does not have personal jurisdiction over any of the Defendants for the reasons set forth under Point I of this Memorandum of Law. Therefore, the Complaint must be dismissed as to all Defendants.

## <u>CONCLUSION</u>

This Court should vacate default judgment against UB2B and Universal pursuant to various grounds enumerated in <u>F.R.C.P.</u> 60(b)(4), and alternatively, 60(b)(1) and 60(b)(6). Furthermore, Plaintiff's Complaint should be dismissed as to all defendants for lack of personal jurisdiction pursuant to <u>F.R.C.P.</u> 12(b)(2).

Dated:  Morristown, New Jersey
       August 20, 2008

Respectfully submitted,
SCHENCK, PRICE, SMITH & KING, LLP

<u>/s/ John P. Campbell (JC-8746)</u>
John P. Campbell (JC-8746)
305 Broadway, Suite 900
New York, New York 10007
(212) 822-1494
Attorneys for Defendants, UB2B Inc., CMA
Trading Inc., and Universal Food Trading

[0098234" DOC.1 ]

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

QUICK CUISINE AG,

                Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                Defendants.

Case No.:  08-CV-1601
(Lynch, J.) (Francis, M.J.)

*CERTIFICATION OF*
*MICHAEL J. MAROTTE*

Michael J. Marotte, of full age and being sworn upon here oath certifies as follows:

1.      I am an Attorney at Law of the State of New York and a member of the law firm of Schenck, Price, Smith & King, LLP and am entrusted with the handling of this matter on behalf of Defendants, and, as such, I am fully familiar with the facts set forth herein.

2.      During the week of April 21, 2008, I personally contacted Plaintiff's counsel and requested Plaintiff's consent to vacate the default judgment entered against UB2B, Inc. and Universal Food Trading.

3.      Plaintiff's counsel denied this request.

4.      Attached hereto as Exhibit 1 is a true and accurate copy of the Complaint filed in this matter.

5.      Attached hereto as Exhibit 2 is a true and accurate copy of the Order to Show Cause filed in this matter.

6.      Attached hereto as Exhibit 3 is a true and accurate copy of the Affidavit for Judgment by Default filed in this matter.

7.      Attached hereto as Exhibit 4 is a true and accurate copy of the unsigned Letter of Intent.

{00977824.DOC.1 }

8.      Attached hereto as Exhibit 5 is a true and accurate copy of the expert report of Professor Joan Llorens Llacuna in this matter.

I certify that the foregoing statements made by me are true to the best of my knowledge. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

By: _____

Michael J. Marotte

Dated: August 21, 2008

*00977824*

# *Certification of Michael J. Marotte*

# *Exhibit 1*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICK CUISINE AG,

        Plaintiff,      :

               :

   -against-         COMPLAINT

               :

UB2B INC., CMA TRADING INC., and UNIVERSAL  Civil Action No.
FOOD TRADING,

               :  08 Civ 1601 (GEL)

         Defendants.    Judge Lynch

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

    Plaintiff, Quick Cuisine AG ("Quick Cuisine"), for its complaint against the defendants UB2B

Inc. ("UB2B"), CMA Trading Inc. ("CMA"), and Universal Food Trading ("Universal") (UB2B, CMA,

and Universal, collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

    1.   This is an action by Quick Cuisine to recover (a) the reasonable and agreed value

of a variety of cooked foods in a unique, self-heating package ("Product") which Quick Cuisine sold and

delivered to the Defendants in June, 2007, at UB2B's specific request, for which Defendants have failed

and refused to pay despite Quick Cuisine's repeated demands for payment, (b) upon an account stated

by Quick Cuisine to Defendants to which said Defendants did not object, and, in fact, did advise Quick

Cuisine they would pay but, to date, have failed and refused to pay, and (c) the balance due to Quick

Cuisine from UB2B for banking charges owed by UB2B which were deducted by the bank from

amounts due from UB2B to Quick Cuisine for the reasonable and agreed value of Product which Quick

Cuisine sold and delivered to UB2B in May, 2007.

PARTIES

2.    At all times hereinafter mentioned Quick Cuisine was and is a corporation organized and existing under the laws of Switzerland, maintaining its principal place of business at Lettenstrasse 7, in the City of Rotkreuz, Switzerland.  Quick Cuisine maintains no offices for the transaction of business in the United States.

3.    At all times hereinafter mentioned Quick Cuisine was and is engaged in the business of manufacturing and selling a variety of cooked foods in a unique self-heating package ("Product").

4.    Upon information and belief at all times hereinafter mentioned defendant UB2B was and is a corporation organized and existing under the laws of the State of New Jersey, maintaining its principal place of business at 463 Barell Avenue, Carlstadt, New Jersey.

5.    Upon information and belief, at all times hereinafter mentioned UB2B was and is engaged in the business of distributing and selling merchandise of many types, including food, to various wholesalers and retailers.

6.    Upon information and belief at all times hereinafter mentioned CMA was and is a corporation organized and existing under the laws of the State of New Jersey, maintaining its principal place of business at 297-101 Kinderkamack Road, Oradell, New Jersey.

7.    Upon information and belief at all times hereinafter mentioned CMA was and is engaged in the business of distributing and selling merchandise, including food, to various wholesalers and retailers.

8.    Upon information and belief, at all times hereinafter mentioned, Universal was a New Jersey partnership formed by UB2B and CMA and/or their respective principals or is a trade name used by UB2B and CMA and/or their respective principals, maintaining its principal place of business at 463 Barell Avenue, Carlstadt, New Jersey.

9.    Upon information and belief at all times mentioned Universal was and is engaged in the business of distributing and selling merchandise, including food, to various wholesalers and retailers.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 (a) (2) as this action is between a foreign corporation and citizens of the State of New Jersey and involves a controversy in excess of $75,000, and supplemental jurisdiction pursuant to 28 U.S.C. §1367 (a).

11.    Venue is proper in this district pursuant to 28 U.S.C. §1391 (a) (2) in that a substantial part of the events giving rise to Quick Cuisine's claims occurred in the City, County, and State of New York.

## FACTS

12.    Quick Cuisine is the manufacturer of the Product which, in 2007, was not being manufactured in the United States.  Pages from Quick Cuisine's website describing its Product are attached hereto as Exhibit A.

13.    After a series of meetings between UB2B's President, Fatima Siner, and CMA's President, Gus Eben, and Quick Cuisine's Marketing and Sales Agent, Sevim S.A. by its President, Nicky Sevim, in the City, County, and State of New York in early 2007, UB2B placed two orders with

3

Quick Cuisine for the Product, advised Quick Cuisine that it planned on placing more orders of similar size, and requested that Quick Cuisine manufacture and warehouse sufficient Product to satisfy its future orders which, it represented, would continue on a monthly basis for similar amounts.

14.    The first order ("First Order") was placed by UB2B in April, 2007, for 26,880 units of Product at a price of $89,686.13 as set forth in Quick Cuisine Invoice No. 1868 ("First Invoice"), copy annexed hereto as Exhibit B and incorporated herein by reference. (The Euros set forth in all invoices have been converted to dollars using a Euro/dollar exchange rate of 1.465.) The First Order was paid except for the sum of $1,686.00 for charges due the bank in connection with UB2B's letter of credit. This amount was deducted by the bank from amounts due to Quick Cuisine from UB2B for delivered Product, and are the responsibility of UB2B as set forth on the First Invoice, but UB2B failed to remit this amount to Quick Cuisine despite due demand therefor.

15.    The second order ("Second Order") was placed by UB2B in May, 2007, for 26,880 units of Product, at a price of $89,686.13 as set forth in Quick Cuisine Invoice No. 1882 ("Second Invoice"), copy annexed hereto as Exhibit C and incorporated herein by reference. At UB2B's request, these goods were sold and delivered to Defendants, to whom the Second Invoice is addressed. However, Defendants have failed to pay the Second Invoice despite due demands that they do so and repeated assurances by the Presidents of both UB2B and CMA that payment in full would be made.

## FIRST CLAIM AGAINST UB2B
### (Breach of Contracts)

16.    Quick Cuisine repeats and realleges the allegations of Paragraphs 1 through 15 hereof as if fully set forth herein.

17.    In or about April and May, 2007, Quick Cuisine and UB2B entered into two contracts.  Pursuant to the First Order, Quick Cuisine agreed to sell and deliver specified Product to UB2B and, pursuant to the Second Order, Quick Cuisine agreed to sell and deliver specified Product to all Defendants, and UB2B agreed to pay specified sums to Quick Cuisine.

18.    UB2B breached the foregoing contracts between it and Quick Cuisine in that despite due demand therefor, UB2B has failed and refused to pay Quick Cuisine (a) with respect to the First Order, the sum of $1,686.00 which was deducted by the bank from amounts due to Quick Cuisine from UB2B for Product delivered to UB2B and which, pursuant to the parties' agreement as set forth on the First Invoice, were the responsibility of UB2B, and (b) with respect to the Second Order, the sum of $89,686.13 representing  the agreed value of the Product which Quick Cuisine duly sold and delivered to Defendants at UB2B's specific request.

19.    As a result of the foregoing facts Quick Cuisine has been damaged in the amount of $91,372.13.

## SECOND CLAIM AGAINST ALL DEFENDANTS

(Reasonable Value)

20.    Quick Cuisine repeats and realleges the allegations of Paragraphs 1 through 15, 17, and 18 hereof as if fully set forth herein.

21.    The reasonable value of the Product sold and delivered by Quick Cuisine to Defendants in June, 2007, was $89,686.13 which sum has not been paid to Quick Cuisine despite due demand therefor.

22.    As a result of the foregoing facts Quick Cuisine has been damaged in the amount of $89,686.13.

5

## THIRD CLAIM AGAINST DEFENDANTS

(Account Stated)

23.    Quick Cuisine repeats and realleges the allegations of Paragraphs 1 through 15, 17, 18, and 21 hereof as if fully set forth herein.

24.    On June 27, 2007, Quick Cuisine forwarded the Second Invoice to each of the Defendants reflecting that the amount of $89,686.13 was due to it from Defendants, jointly and severally.

25.    Defendants never objected to the Second Invoice, and, in fact, the respective President of each of UB2B and CMA advised Quick Cuisine that the full amount would be paid.  To date, Defendants have failed to remit payment to Quick Cuisine on the account stated to them in the Second Invoice of $89,686.13

26.    As a result of the foregoing facts Quick Cuisine has been damaged in the amount of $89,686.13.

### PRAYER FOR RELIEF

WHEREFORE, Quick Cuisine demands judgment as follows:

1.    On the First Claim against UB2B, in the amount of $91,372.13 together with interest as allowed by law from September 1, 2007; and

2.    On the Second and Third Claims against each of U2B2, CMA, and Universal, jointly and severally, in the amount of $89,686.13 together with interest from September 1, 2007; and

6

3.    The costs and disbursements of this action; and

4.    Such other and further relief as this Court shall deem just and proper.

Dated:  New York, New York
        February 13, 2008

Respectfully submitted,
TANNENBAUM DUBIN & ROBINSON, LLP

By: _____
    Laura H. Rubin (LR-0332)

1140 Avenue of the Americas
New York, New York 10036
Tel:    (212) 302-2900

Attorneys for Plaintiff
Quick Cuisine AG

SEM21081.L50

# EXHIBIT A





**QUICKCUISINE products are prepared meals which heat up all by themselves (self-heating).**

You now have the opportunity of tasting an excellent hot meal whenever and wherever you so desire.

**You will enjoy this very practical meal in a variety of places such as:**
Whilst travelling, camping, on the beach, at a picnic, whilst sailing, in the office or simply at home.



CAUTION: Open the can with caution. To avoid unecessary risks, do not open the kit and do not manipulate the heating system. Direct contact with the eyes can be harmful. Adhere to the user instructions. The meal can become extremely hot therefore ensure that the box is placed on a heat resistant surface.

STORE AT ROOM TEMPERATURE. DO NOT REFRIGERATE



Enjoy a delicious hot meal in only 10 minutes!

Special FDA approved meals available for USA & Canada







# EXHIBIT B

QUICK CUISINE AG

Lettenstrasse 7
Postfach
CH-6343 Rotkreuz
Switzerland
Vat N°: 644 439

Tel : +41 41 792 02 37
Fax : +41 41 792 02 36

Représentant fiscal Schneider SA
7 rue Alexandre Freund BP 176
F 68 305 Saint Louis Cedex
Numéro de TVA: 33 492 972 922



Marketing & Sales

SEVIM S.A.
Espace 114, Grand-Rue 114
CH-1820 Montreux
Switzerland
Tel : +41 21 963 74 40
Fax : +41 21 963 74 39
Email: info@quickcuisine.info

EX WORKS FRANCE

INVOICE N° 1874

| Name | DYAD |
|---|---|
| Address | ZI des prés Loribes |
| | F-59 128 Flers en Escrebieux |
| | France |
| TVA N° | FR 00 439 626 888 |
| Contact | Jérémie |
| Tél | +33 3.27.86.96.30 |

| Date | 31 May 2007 |
|---|---|
| Order N° | 010307FS |
| Invoice N° | 1874 |
| REF. PROFORMA INVOICE | N° 1868 |
| Payment Terms | Balance due paid by Irrevocable Letter of Credit payable at sight. All banking and other charges to be borne by customer. |

INVOICE TO:

| Name | UB2B INC |
|---|---|
| Address | 463 BARELL AVE |
| | CARLSTADT, NJ 07072 |
| | U.S.A. |
| Tel: | 201 319 9700 |

| Client No.: | 21940 |
|---|---|
| Delivery: | Ex-works France |
| Destination: | U.S.A. |

| Quantity | Description | Weight | | Unit price | Amount (EUR) |
|---|---|---|---|---|---|
| | **Press 'nHEat self-heating meals** | 330 g | | | |
| 4032 | Tuna Burgundy with Vegetables | 10.58 oz | (FDA n° 030228009) | € 2.34 | € 9,434.88 |
| 6720 | Seafood Paella | 10.58 oz | (FDA n° 030228007) | € 2.29 | € 15,388.80 |
| 6720 | Ravioli stuffed with Vegetables in Tomato Sauce | 10.58 oz | (FDA n° 030228008) | € 2.24 | € 15,052.80 |
| 6720 | Rotini (Tortellini) with Tomato Sauce | 10.58 oz | (FDA n° 030523001) | € 2.24 | € 15,052.80 |
| 2688 | Salmon & Vegetables with Lemon Sauce | 10.58 oz | (FDA n° 030523003) | € 2.34 | € 6,289.92 |

Objections must be sent to us in writing within 7 days of receipt
of goods, failing which, they will not be considered.

No bank or other charges to be deducted from settlement.

Ownership of goods is retained until full settlement.

IMPORTANT: Payment to be made directly to:

| Bank: | CREDIT SUISSE, CH-8070 ZÜRICH |
|---|---|
| Account name: | QUICK CUISINE AG |
| IBAN (EUR): | CH56 0483 5084 2190 2200 0 |
| SWIFT / BIC: | CRESCHZZ80A |

Livraison exonérée selon l'article 262-I-1 du CGI

| Sub Total | € 61,219.20 |
|---|---|
| Total amount due immediately | € 61,219.20 |

# EXHIBIT C

QUICK CUISINE AG
Lettenstrasse 7
Postfach
CH-6343 Rotkreuz
Switzerland
Vat N°: 644 439

Tel : +41 41 792 02 37
Fax : +41 41 792 02 36

Représentant fiscal Schneider SA
7 rue Alexandre Freund BP 176
F 68 306 Saint-Louis Cedex
Numéro de TVA: 33 492 972 922



Marketing & Sales
SEVIM S.A.
Espaca 114, Grand-Rue 114
CH-1820 Montreux
Switzerland

Tel : +41 21 963 74 40
Fax : +41 21 963 74 39
Email: info@quickcuisine.info

**EX WORKS FRANCE**

*INVOICE N° 1882*

| Name | DYAD |
| Address | ZI des près Loribes |
| | F-59 128 Flers en Escrebieux |
| | France |
| TVA N° | FR 00 439 626 888 |
| Contact | Jérémie |
| Tél | +33 3.27.86.06.30 |

| Date | 27 June 2007 |
| Order N° | 120307GE |
| Invoice N° | 1882 |
| Payment Terms | 60 days from date of collection of goods from DYAD. Payment by wire transfer in EURO. |

**INVOICE TO:**

| Name | UBB INC / CMA TRADING INC / UNIVERSAL FOOD TRADING for PRESS 'nHEat |
| Address | 463 BARELL AVE |
| | CARLSTADT, NJ 07072 |
| | U.S.A. |
| Tel: | 201 319 9700 |

| Client No.: | 21940 |
| Delivery: | Ex-works France |
| Destination: | U.S.A. |

| Quantity | Description | Weight | | Unit price | Amount (EUR) |
|---|---|---|---|---|---|
| | **Press 'nHEat self-heating meals** | 300 g | | | |
| 4032 | Tuna Burgundy with Vegetables | 10.58 oz | (FDA n° 030228009) | € 2.34 | € 9,434.88 |
| 6720 | Seafood Paella | 10.58 oz | (FDA n° 030228007) | € 2.29 | € 15,388.80 |
| 6720 | Ravioli stuffed with Vegetables in Tomato Sauce | 10.58 oz | (FDA n° 030228008) | € 2.24 | € 15,052.80 |
| 6720 | Rotini (Tortellini) with Tomato Sauce | 10.58 oz | (FDA n° 030523001) | € 2.24 | € 15,052.80 |
| 2688 | Salmon & Vegetables with Lemon Sauce | 10.58 oz | (FDA n° 030523003) | € 2.34 | € 6,289.92 |

Objections must be sent to us in writing within 7 days of receipt of goods, failing which, they will not be considered.

No bank or other charges to be deducted from settlement.

Ownership of goods is retained until full settlement.

IMPORTANT: Payment to be made directly to:

| Bank: | CREDIT SUISSE, CH-8070 ZURICH |
| Account name: | QUICK CUISINE AG |
| IBAN (EUR): | CH55 0483 5024 2190 2200 0 |
| SWIFT / BIC: | CRESCHZZ80A |

Livraison exonérée selon l'article 262-I-1 du CGI

| Sub-total | € 61,219.20 |
| Total amount due immediately | € 61,219.20 |

# *Certification of Michael J. Marotte*

# *Exhibit 2*

# 5

LYN145.

At _ / / / / / _ of the United
States District Court for Southern District of
New York of held at the courthouse located
at 500 Pearl Street, New York, New York,
on the 28 day of April, 2008.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/1/08
```

PRESENT: Hon. Gerard H. Lynch
Judge

- - - - - - - - - - - - - - - - - - - - - - - - - -x
QUICK CUISINE AG,                               :
                                                :
                              Plaintiff,         :
                                                :
              -against-                          :
                                                :
UB2B INC., CMA TRADING INC.                     :
 and UNIVERSAL FOOD TRADING,                    :
                                                :
                              Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER TO SHOW CAUSE

08 Civ. 1601 (GEL)

UPON the annexed affidavit of Laura H. Rubin, Esq. sworn to on April 25, 2008, and

the exhibits annexed thereto, it is hereby

ORDERED, that Defendants, UB2B Inc. ("UB2B") and Universal Food Trading

("Universal"), show cause at Court Room 6B of this Court, to be held at the courthouse thereof

located at 500 Pearl Street, New York, New York, on the 27 day of May, 2008, at 2:15

o'clock in the after noon of that day, or as soon thereafter as counsel can be heard, why an Order

should not be granted directing the Clerk of this Court to enter a default judgment in favor of

Plaintiff, Quick Cuisine AG, against Defendants UB2B and Universal jointly and severally in the

amount of $89,686.13, together with interest as allowed by law from September 1, 2007, and the

costs and disbursements of this action.

ORDERED, that sufficient reason appearing therefore, let service by nationally

recognized overnight courier of a copy of this Order together with the papers upon which it was

granted, upon each of Defendant U2B2 and Universal at their last known place of business, 463

Barell Avenue, Carlstadt, New Jersey 07072 on or before _April 30_____, 2008, be

deemed good and sufficient service thereof.

ENTER

_____
U.S.D.J

4/28/08

*SEM42382.L99.docx*

# *Certification of Michael J. Marotte*

# *Exhibit 3*

#6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICK CUISINE AG,

                               :      08 Civ. 1601 (GEL)

                  Plaintiff,   :
      -against-                           AFFIDAVIT FOR
                               :     JUDGMENT BY DEFAULT

UB2B INC., CMA TRADING INC.,
 and UNIVERSAL FOOD TRADING,   :

               Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK  )

      LAURA H. RUBIN, being duly sworn, deposes and says:

         1.     I am a member of the Bar of this Court and am a member of the firm of

Tannenbaum Dubin & Robinson, LLP, attorneys for Quick Cuisine AG, the plaintiff in the

above-entitled action and I am familiar with all the facts and circumstances in this action.

         2.     I make this affidavit pursuant to Rule 55.1 and 55.2(a) of the Civil Rules

for the Southern District of New York, in support of plaintiff's application for the entry of a

default judgment against defendants UB2B Inc. ("UB2B") and Universal Food Trading

("Universal").  Plaintiff was unable to effect personal service upon defendant CMA Trading Inc.

         3.     This is an action to recover $89,686.13 owed jointly and severally by

defendants UB2B and Universal to plaintiff for goods sold and delivered by plaintiff to said

defendants at defendants' specific request, no part of which has been paid despite due demand

therefor.

         4.     Jurisdiction of the subject matter of this action is based on diversity

jurisdiction.

5.     This action was commenced on February 19, 2008, by the filing of the summons and complaint.  A copy of the summons and complaint was served on the defendants on February 26, 2008, by personal service on authorized agents of each defendant and proof of service by the Special Process Server was filed with the Court on March 11, 2008.  The defendants have not answered the complaint and the time for the defendants to answer the complaint has expired.

6.     This action seeks judgment for the liquidated amount of $89,868.13 against defendants UB2B and Universal jointly and severally, plus interest at 9% from September, 2007, for total interest as of April 30, 2008, of $5,372.73, as shown by the annexed Statement, together with costs and disbursements comprising the purchase of a civil action number ($325.00) and service of process on these two defendants ($300).

7.     An inquest is not necessary to determine damages because the amount sought is the liquidated amount set forth in plaintiff's invoice to defendants, a copy of which is annexed to the Complaint as Exhibit C.  See Rule 55(a)1, Federal Rules of Civil Procedure.

8.     The disbursements sought to be taxed have been made in this action or will necessarily be made herein.

WHEREFORE, plaintiff requests the entry of Default and the entry of the annexed Judgment against defendants.

LAURA H. RUBIN

Sworn to before me this
25ᵗʰ day of APRIL, 2008

_____
Notary Public

ARTHUR STRACHMAN
NOTARY PUBLIC, State of New York
No. 01ST6118985
Qualified in Nassau County
Commission Expires Nov. 22, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICK CUISINE AG,

:     08 Civ. 1601 (GEL)

                 Plaintiff,   :

     -against-               STATEMENT OF DAMAGES

                              :

UB2B INC., CMA TRADING INC.,
  and UNIVERSAL FOOD TRADING,   :

              Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - -x


Principal amount sued for against Defendants UB2B Inc. and
Universal Food Trading Jointly and Severally ...........................................................$89,686.13

Interest at 9% from September 1, 2007 through April 30, 2008 ($22.11 a day) .............5,372.73

Costs and Disbursements:

Clerk's fee ........................................................................................................................350.00

Process Server fee for service ...........................................................................................300.00

Statutory Fee .............................................................................................................................

Total as of April 30, 2008 against UB2B and Universal jointly and severally
(includes costs and disbursements) ................................................................................95,708.86

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICK CUISINE AG,

        :     08 Civ. 1601 (GEL)

                Plaintiff,   :

   -against-

        :     <u>CLERK'S CERTIFICATE</u>

UB2B INC., CMA TRADING INC.,
 and UNIVERSAL FOOD TRADING,   :

              Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x


     I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on February 19, 2008, with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant UB2B Inc. by serving an authorized agent of said defendant on February 26, 2008, and on defendant Universal Food Trading by serving an authorized agent on February 26, 2008, and proof of such service thereof was filed on March 11, 2008.

     I further certify that the docket entries indicate that the said defendants have not filed an answer or otherwise moved with respect to the complaint herein.  The defaults of the defendants are hereby noted.


Dated: New York, New York
     April 25 , 2008


                     **J. MICHAEL MCMAHON**
                     Clerk of the Court


            By:  _____
                  Deputy Clerk

# *Certification of Michael J. Marotte*

# *Exhibit 4*

December 22, 2006

Fatima Siner
c/o UB2B Plus Inc.
463 Barell Avenue
Carlstadt, NJ  07072

Dear Ms. Siner,

        Pursuant to our recent discussions regarding your desire to protect Press 'n' Heat's interests while the terms and conditions of the Distributorship Agreement are being negotiated, attached please find a "discussion draft" of a proposed form of a Letter of Intent ("Letter") for your review and comment and, potential, revision.

        Please note that there is included a "Schedule A" for the purpose of describing the products to be distributed.  Please provide to me a description of the Products, which I may include on the Schedule A.

        Please review the Letter and communicate with me regarding same at your earliest convenience.  As you are aware, after today I am out of the office through January 2nd.  Nevertheless, should it become urgent that you need to discuss this matter with me in my absence, you can reach me at 802-273-2616.

        Should you have any questions regarding the foregoing, please do not hesitate to communicate with me.

                                        Very truly yours,



                                        Richard Jon Contant

RJC/ajg
cc:     Universal Trading Food, LLC
        Attn: Ulisses Sabato
        463 Barell Avenue
        Carlstadt, NJ  07072

        CMA Trading, Inc.
        Attn: Gus Eben
        297-101 Kinerkamack Rd.
        Oradell, NJ  07649

**Press 'n' Heat, L.L.C.**
463 Barell Avenue
Carlstadt, New Jersey  07072

December    , 2006

Quick Cuisine AG
Lettenstrasse
7 Postfach CH
6343 Rotkerenz
Switzerland

> Attention: Nicky Sevim

Dear Mr. Sevim:

In furtherance of the discussions between Fatima Siner and Stephen Server on behalf of Press 'n' Heat, L.L.C. ("Distributor") and you on behalf of Quick Cuisine AG ("Manufacturer") regarding an exclusive distributorship relationship, this letter ("Letter of Intent"), sets forth the parties' preliminary understanding of the principal terms upon which a formal agreement evidencing and memorializing such relationship ("Distributorship Agreement") will be executed.

1.    **Distribution Rights**. The Manufacturer ("you") and Distributor ("we") are negotiating the terms and conditions of a Distributorship Agreement under which Distributor will distribute the pre-packaged "to heat and serve" food products which you manufacture ("Products"), more particularly described in Schedule A.  The parties intend that the Distributorship Agreement will include and exclusive right of distribution in North America ("Territory"), with first right of refusal to Distributor for other territories, as the parties shall mutually agree ("the Transaction").

2.    **Distributorship Agreement**. The parties will diligently proceed with negotiation of the definitive Distributorship Agreement, the initial draft of which shall be prepared by us and submitted to you within fifteen (15) business days after your acceptance hereof ("Initial Draft Date") and the delivery of such acceptance to us ("Acceptance Date").  The final terms of the Distributorship Agreement are subject to good faith negotiations by both parties which are expected

1

to result in the Distributorship Agreement being executed no later than (30) days after the Initial Draft Date. The Distributorship Agreement shall contain, among other terms: (a) representations, warranties and covenants typical for transactions of this type, including, without limitation, a non-competition covenant by the parties; (b) reasonable indemnification relating to breaches of representations, warranties and covenants; (c) conditions precedent to each party's obligation to perform; (d) minimum Product purchase requirements; (e) Product payment terms; (f) compliance with FDA and other governmental regulations; (g) insurance; (h) default; (i) dispute resolution; (j) trademarks and trade names; (k) marketing efforts; (l) taxes and licensing; (m) financing; (n) Product pricing; (o) Product delivery and risk of loss; (p) Product inspection; (q) sales and marketing efforts; and (r) such other terms and conditions as are customary for the exclusive marketing and distribution of food products.

3.    **Term**.  The initial term of the Distributorship Agreement will be for a period of five (5) years, with the Distributor's option to renew for additional five (5) year periods on a "rolling" and "evergreen" basis, provided certain levels of Product sales, mutually acceptable to the parties, are met.

4.    **Due Diligence**.  During the Pre-Execution Period (as hereinafter defined), the Manufacturer shall provide to the Distributor such information regarding the Product, its patent status in the Territory and other information regarding the Manufacturer as Distributor may reasonably request, all of which information shall be deemed Confidential Information. We agree to provide to you such information about us and our proposed marketing and distribution plans as you shall reasonably request; all of which information shall be deemed Confidential Information.

5.    **Execution**.  The Execution of the Distributorship Agreement shall take place by the exchange of said document by both parties *seriatim* or executed in counterparts.  The period from the Acceptance Date hereof ("Effective Date") through Execution of the Distributorship Agreement is hereinafter defined as the "Pre-Execution Period".

6.    **Further Assurances and Supplemental Documentation**.  Each party shall give such further assurances and execute (or

2

cause to be executed) any such documents as the other may reasonably request in connection with the Transaction.

7.    **No Shop or Solicitation**.  For a period of sixty (60) days from the Effective Date ("Restricted Period"), the Manufacturer shall not, directly or indirectly, solicit, initiate, or encourage the submission of or accept proposals or offers from any person or entity to distribute the Products in the Territory, or otherwise enter into any similar business undertaking with respect thereto, and will take no action, nor suffer the taking of any action, which would impair, impede or otherwise prevent the consummation of the Distributorship Agreement.

    7.1    Specifically, during the Restricted Period, the Manufacturer will not, and will not permit, suffer or allow any of its representatives, officers, directors, shareholders, equity holders, employees, or agents to, directly or indirectly, solicit, initiate, encourage, conduct or continue discussions or negotiations with any other person or entity concerning any distribution of the Products in the Territory (any such transaction being referred to herein as "Distribution").  The Manufacturer agrees to immediately advise the Distributor if the Manufacturer receives a Distribution proposal from another party, directly or indirectly, and will advise such party that it cannot and will not discuss such proposal.

8.    **Expenses**.  Each of the parties hereto agrees to bear its own  expenses and any fees incurred in connection with the Distributorship Agreement contemplated hereby.

9.    **Binding Letter of Intent**. The signatories hereto consider this a binding agreement to proceed with the negotiations of an exclusive Distributorship Agreement as outlined herein and each agrees to act in good faith in negotiating the terms of and finalizing the Distributorship Agreement and to use their best efforts to cause the satisfaction of any conditions precedent to the consummation thereof.  Each signatory represents to the other that there are no agreements between any third parties which would prevent the entry into the Distributorship Agreement by such party or limit or impair the ability of such party to perform such Distributorship Agreement or obtain the benefits that would result therefrom.

9.1    Upon execution hereof, and in reliance on your
undertaking to negotiate the Distributorship Agreement
in good faith, we shall continue to develop its
potential sales force for distribution of the Product
in the Territory and continue to expend time, money
and effort in the marketing effort required to effect
the sale of the Product, on an expedited basis, in the
Territory.  Also in reliance on your good faith, we
shall engage counsel to draft the Distributorship
Agreement, on an expedited basis, and undertake all
required due diligence.

10.    **Arbitration**.  Any controversy or claim arising out of or
relating to this Letter of Intent or the Distributorship
Agreement shall be settled by arbitration in accordance
with the rules of the American Arbitration Association, by
one Arbitrator, in the City of Hackensack in the State of
New Jersey, and shall be enforceable in any court having
competent jurisdiction.

11.    **Confidentiality and Non-Disclosure**.  No party shall
disclose the terms of the within Letter of Intent or
Distributorship Agreement or any Confidential Information
obtained in connection herewith, other than to their
officers, directors, managers, employees, prospective
agents, sales representatives, lenders, and their
respective attorneys, accountants and advisors ("Authorized
Persons").

11.1    **CONFIDENTIAL INFORMATION.** "Confidential Information"
means nonpublic information that a disclosing party
("Disclosing Party") designates as being confidential
or which, under the circumstances surrounding
disclosure the receiving party ("Receiving Party")
should know is treated as confidential by the
Disclosing Party.  Confidential Information includes,
without limitation, non-public information relating to
released or unreleased Disclosing Party Products, the
marketing or promotion of any Disclosing Party
Product, Disclosing Party's business policies or
practices, financial information, technical
information, computer systems, infrastructure designs,
data, analysis, compilations, studies or other
documentation and information received from others
that Disclosing Party is obligated to treat as
confidential.  Confidential Information disclosed to

4

Receiving Party by any Disclosing Party, its related entities and/or agents is covered by this Letter of Intent.  Confidential Information shall not include any information that: (i) is or subsequently becomes publicly available without Receiving Party's breach of any obligation owed to Disclosing Party; (ii) became known to Receiving Party prior to Disclosing Party's disclosure of such information to Receiving Party; (iii) became known to Receiving Party from a source other than Disclosing Party other than by the breach of an obligation of confidentiality owed to Disclosing Party; or (iv) is independently developed by Receiving Party without access to the Disclosing Party's information.

11.2 **OBLIGATION OF NON-DISCLOSURE.** Receiving Party shall not use or disclose any Confidential Information to third parties following the date of its disclosure by Disclosing Party, except as provided for by this Letter of Intent, the Distributorship Agreement or in accordance with judicial or other governmental order (provided Receiving Party shall give Disclosing Party reasonable notice prior to such disclosure and shall comply with any applicable protective order or equivalent).  Receiving Party shall safeguard the Confidential Information.  Receiving Party agrees to segregate all such Confidential Information from the confidential information of others in order to prevent commingling.  Receiving Party may disclose Confidential Information only to Receiving Party's Authorized Persons on a "need-to-know" basis.  The Receiving Party may use the Confidential Information only for the purpose of evaluating entering into the Distributorship Agreement that is currently being discussed by the parties hereto or after its execution in the performance of the Distributorship Agreement.

13. **<u>Enforcement.</u>** In any arbitration proceeding or legal action brought to enforce the terms of this Letter of Intent or the Distributorship Agreement, the prevailing party shall be entitled to recover from the non-prevailing party or parties, its reasonable attorneys' fees and costs of such proceeding or action.

5

14. **Acceptance**. If the Manufacturer agrees to the terms of the foregoing, please confirm acceptance thereof on a copy of this letter enclosed for that purpose ("Acceptance").

15. **Signatory Authorization**.  Each individual who executes this Letter of Intent or its Acceptance, represents that he or she is duly authorized to do so, has the full power and authority to enter into the Transaction, individually and/or on behalf of any entity, and that there is no legal impediment or factual condition existent which would prevent the consummation of the Transaction by such party signatory as contemplated hereby.

16. **Benefit**. This Letter of Intent shall bind and enure to the benefit of the parties hereto and their respective legal representatives, successors and permitted assigns.  This Letter of Intent is not assignable by either party without the express written consent of the other party which consent may be withheld by such party in its absolute discretion.

**Press 'n' Heat, L.L.C.**

_____
By:  Fatima Siner,
     Authorized Signatory

**ACCEPTANCE**

The Manufacturer hereby accepts the terms of the foregoing Letter of Intent and agrees to perform the respective obligations to be performed by such Manufacturer thereunder.

**QUICK CUISINE AG**

By:  _____
     Nickey Sevim
     Authorized Signatory

6

<u>SCHEDULE A</u>
[TBC]

# *Certification of Michael J. Marotte*

# *Exhibit 5*

**Joan LLorens LLacuna Titular Professor in Chemical Engineering of the University Of Barcelona Spain.**

## OBJECTIVE

Determine the grade of hydratation of Calcium Oxide contain in the system of heating three cans of pre cooked food of the brand " QUICK CUISINE'' Given to us from TSHS ( The Spanish Trading House ).

In The Beginning the heating of the food is based on the heat released by the Hydration of Oxide of Calcium obtain by the reaction of Oxide of Calcium in contact with water just in the moment need it to heat the food. If the Oxide of Calcium has been previously in contact with water hydrates in part or totally and looses the capacity of heating the food when mixed with more water.

## PROOFS

Two types of analysis had been done, to each one of the Oxides of Calcium of each one of the cans of this Food.

The first analysis consisted in register the weight the material looses when heated in an atmosphere of Nitrogen of 950 Degrees Celsius (1742 D. Fahrenheit) with a heating velocity of 10 Celsius per Min. (50 F). This analysis is known as TGA (Thermo Gravimetric Analysis). This analysis is used to determine the quantity of water of hydration of Oxide of Calcium coming off at a temperature of 440 to 470 Celsius. (824-878 Fahrenheit).

The results of the analysis TGA had been
TGA (N2, 50.0 mL/Min)
30.0-950.0 Celsius,10 Celsius/Min.

The second analysis consisted in register the Heat absorbed for the material when heated in atmosphere of Nitrogen to a temperature of 600 Degrees Celsius ( 1112 Fahrenheit) with a heating velocity of 10 C/50 f per Min.

This Analysis is known as DSC ( Differential Scanning Calorimetric). With this analysis we can also determine the quantity of water in the hydration of Calcium Oxide because to get this water to come off ( at the temperature of 440c-to 470c) we have to supply to the test material 5660 j per Gram of Water detached. At the same time, once dehydrated the test Material analyzed has been heated again to proved that the dehydration has been completed.

The condition of the analysis DSC had been.

DSC (N2,50.0 Ml/Min)

30.0-600.0 Degrees Celsius 10/D Celsius / Min.

600.0-30.0 Degrees Celsius  10/D Celsius/Min.

30.0- 600.0 Degrees Celsius 10/D Celsius/Min.

Both analyses had been done to confirm and assure the truth of the results.

The 3 Cans analyzed were contained in the system of heating of 3 cans of all ready prepare food with reference indicated in the following table:

| TEST MATERIAL | FOOD | DUE DATE |
|---|---|---|
| 1 | Salmon and Potatoes w/ Lemon Sauce | 10/21/2007 |
| 2 | Chicken tikka Massala & Rice | 11/29/2008 |
| 3 | Chicken Tikka Massala & Rice | 11/29/2008 |

In The appendices A shows the labels of each one of the boxes as well as the UPC for each one.

## RESULTS

The detail of the results of both analysis TGA & DSC are shown in the appendices B & C respectively.

The resume of the results of the analysis TGA are Shown on the Following table.

| T Material | Weight grams | Temp Celsius | Weight Loose | % Dehydration |
|---|---|---|---|---|
| 1 | 0.01326 | 452 | 0.00199 | 62 % |
| 2 | 0.02878 | 460 | 0.00285 | 41% |
| 3 | 0.01383 | 465 | 0.00306 | 91% |
| | | | | |

In the Table is shown the initial weight of the material in grams. The medium  temperature that registers de detaching of water of the dehydration of Calcium Oxide. The weight loose of the material in grams and the degree of dehydration of the Calcium Oxide. The degree of the Hydration Of Calcium Oxide has been calculated taking into account that the reaction of Dehydration is the following

$$Ca\,(OH)_2 \longrightarrow CaO + H_2O$$

The resume of the results of the analysis DSC are Shown in the following table:

| T.Material | Weight Grams | Temp Celsius | Energy (J) | % Hydration |
|---|---|---|---|---|
| 1 | 0.00464 | 457 | 4.71 | 74% |
| 2 | 0.00718 | 456 | 3.90 | 40% |
| 3 | 0.00339 | 455 | 4.22 | 91% |
| | | | | |

This table shows the initial Weight in grams, the medium temperature that registers the heat of the dehydration of Calcium Oxide, the energy absorbed in the process of dehydration in Jules and the degree of hydration of the Calcium Oxide.

The degree of Hydration has been calculated taking into account that for every gram of water detached at 450 degrees Celsius 5660 Jules are needed.

The results obtained in both analysis are the same:
The Test Material # 1is Hydrated in a percentage between 60 & 75% , Test Material # 2 is Hydrated in a percentage of 40 % and Test Material # 3 is Hydrated in a percentage of 91 % .

## CONCLUTIONS

• The 3 Test Materials of Calcium Oxide are Partially hydrated .

• The Test Material # 1 is Hydrated in a percentage that goes from 60 to 75 % and because of this the activity to heat is comprehended between 25 & 40 % of the activity of the Calcium Oxide Dehydrated.

• The test Material # 2 is hydrated in a percentage of 40% and because of this its activity to heat is of 60 % of the activity of Calcium Oxide Dehydrated .

• The Test Material # 3 is Hydrated in a percentage of 91 % and because of this the activity to heat is around 9 % of the activity of Calcium Oxide dehydrated.

• The products examined do not meet the conditions for the correct process of auto heating mixing with water.
Its capacity of auto heating is enormously limited ( In Test Material # 3 is almost None...) And it seems really difficult that the manufacturer did not had Knowledge about this anomaly

that prevents this product to be sold with the necessary warranties .



Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franqués, 1
08028 Barcelona
Tel. 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J

Barcelona 19 de enero de 2008

Apéndice A. Recortes de las etiquetas de las tres cajas y códigos de barras de cada una de ellas











Dictamen TSTH



UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 83
Fax 93 402 12 91

NIF Q-0818001-J

Apéndice B. Detalle de los análisis TGA:





Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 88
Fax 93 402 12 91

Nfi Q-0818003-J



Dictamen TSTB



Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 58
Fax 93 402 12 91

NIF Q-0818001-J

## Apéndice C. Detalle de los análisis DSC:





Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel. 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J



UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel. 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J

JOAN LLORENS LLACUNA, PROFESOR TITULAR DE INGENIERÍA QUÍMICA DE LA UNIVERSIDAD DE BARCELONA, A PETICIÓN DE IGNACIO MOLINA DE LA EMPRESA THE SPANISH TRADING HOUSE (TSTH)

DICTAMEN

## Objetivo

Determinar el gado de hidratación del óxido de calcio contenido en el sistema para calentar tres latas de comida prepara, de la marca "QUICK CUISINE", suministradas por TSTH.

El principio para calentar la comida se basa en el calor liberado en la hidratación del óxido de calcio obtenido al poner en contacto el óxido de calcio con agua, justo en el momento que se quiere calentar la comida. Si el óxido de calcio ha estado previamente en contacto con agua se hidrata, en parte o totalmente, y pierde capacidad de calentar cuando se mezcla con más agua.

## Ensayos

Se han realizado dos tipos de análisis a cada uno de los óxidos de calcio de cada una de las latas de comida preparada.

El primer análisis ha consistido en registrar la pérdida de peso del material al calentarlo en atmósfera de nitrógeno hasta una temperatura de 950 °C, con una velocidad de calentamiento de 10 °C/min. Este análisis se conoce como análisis TGA (Termo Gravimetric Analysis). Con este análisis se puede determinar la cantidad de agua de hidratación del óxido de calcio al desprenderse a una temperatura de 440-470 °C.

Las condiciones del análisis TGA han sido:
TGA (N2, 50.0 mL/min).
30.0-950.0 °C, 10°C /min

El segundo análisis ha consistido en registrar el calor absorbido por el material al

UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal.lúrgia

Martí i Franqués, 1
08028 Barcelona
Tel 93 402 12 84
Fax 93 402 12 91

NIF Q-0818001-J

calentarlo en atmósfera de nitrógeno hasta una temperatura de 600 °C, con una velocidad de calentamiento de 10 °C/min. Este análisis de conoce como análisis DSC (differential scanning calorimetry). Con este análisis también se puede determinar la cantidad de agua de hidratación del óxido de calcio ya que para desprender esta agua (a la temperatura de deshidración de 440-470 °C) hay que suministrar a la muestra 5660 J por cada gramo de agua desprendida. Al mismo tiempo, una vez deshidratada la muestra analizada se ha vuelto a calentar para comprobar que la deshidratación ha sido completa.
Las condiciones del análisis DSC han sido:
DSC (N2, 50.0 mL/min).
 30.0-600.0 °C, 10°C /min
✳ 600.0-30.0 °C, -10°C /min
 30.0-600.0 °C, 10°C /min

Los dos análisis se han realizado para confirmar y asegurar la veracidad de los resultados.

Las 3 muestras analizadas estaban contenidas en el sistema de calentamiento de 3 latas de comida preparada con las referencias indicadas en la tabla siguiente:

| Muestra | Tipo de comida | Fecha de caducidad |
|---------|----------------|--------------------|
| 1 | Salmon and Potatoes with Lemon Sauce | 21 10 2007 |
| 2 | Chicken Tikka Massala and Rice | 29.11.2008 |
| 3 | Chicken Tikka Massala and Rice | 29.11.2008 |

En el apéndice A se muestran los recortes de las etiquetas de las tres cajas así como los códigos de barras de cada una de ellas.

UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal.lúrgia

Martí i Franquès 1
08028 Barcelona
Tel 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J

## Resultados

El detalle de los resultados de los análisis TGA y DSC se muestran los apéndices B y C, respectivamente.

El resumen de los resultados de los análisis TGA se muestran en la tabla siguiente:

| Muestra | TGA Peso ini. [g] | T °C | Perd. Peso [g] | % Hidratación |
|---------|-------------------|------|----------------|---------------|
| 1 | 0.01326 | 452 | 0.00199 | 62½ |
| 2 | 0.02878 | 460 | 0.00285 | 41½ |
| 3 | 0.01363 | 465 | 0.00306 | 91½ |

En la tabla se muestra el peso inicial de muestra en gramos (Peso ini. [g]), la temperatura media en la que se registra la pérdida del agua de hidratación del óxido de calcio (T °C), la pérdida de peso de la muestra en gramos (Perd. Peso [g]) y el grado de hidratación del óxido de calcio (% Hidratación). El grado de hidratación se ha calculado teniendo en cuenta que la reacción de deshidratación es la siguiente:

$$Ca(OH)_2 \rightarrow CaO + H_2O$$

El resumen de los resultados de los análisis DSC se muestran en la tabla siguiente:

| Muestra | DSC Peso ini. [g] | T °C | Ener. [J] | % Hidratación |
|---------|-------------------|------|-----------|---------------|
| 1 | 0.00464 | 457 | 4.71 | 74½ |
| 2 | 0.00718 | 456 | 3.90 | 40½ |
| 3 | 0.00339 | 455 | 4.22 | 91½ |

En la tabla se muestra el peso inicial de muestra en gramos (Peso ini. [g]), la temperatura media en la que se registra el calor de deshidratación del óxido de calcio (T °C), la energía absorbida en el proceso de deshidratación en Julios (Ener. [J]) y el grado de hidratación del óxido de calcio (% Hidratación). El grado

UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J

de hidratación se ha calculado teniendo en cuenta que por cada gramo de agua desprendida a 450 ºC se precisan 5660 Julios.

Los resultados obtenidos por ambos análisis son concordantes: la muestra 1 está hidratada en un porcentaje que está entre el 60 y el 75%, la muestra 2 está hidratada en un porcentaje de alrededor del 40% y la muestra número 3 está hidratada en un porcentaje de alrededor del 91%.

## Conclusiones

- Las tres muestras de óxido cálcico analizadas están parcialmente hidratadas.

- La muestra 1 está hidratada en un porcentaje que va desde el 60 al 75% y, por tanto, su actividad para calentar está comprendida entre el 25 y el 40% de la actividad del óxido de calcio deshidratado.

- La muestra 2 está hidratada en un porcentaje del orden del 40% y, por tanto, su actividad para calentar es del orden del 60% de la actividad del óxido de calcio deshidratado.

- La muestra 3 está hidratada en un porcentaje del orden del 91% y, por tanto, su actividad para calentar es del orden del 9% de la actividad del óxido de calcio deshidratado.

- Los productos examinados no reúnen las condiciones para un proceso correcto de autocalentamiento al mezclarlos con agua. Su capacidad de autocalentamiento es muy limitada (en la muestra 3 es prácticamente nula) y parece difícil que el fabricante desconociera esta anomalía, que impide poner este producto a la venta con las debidas garantías.

Dr. Joan Llorens Llacuna

Dictamen TSTH

4



Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès 1
08028 Barcelona
Tel 93 402 12 58
Fax 93 402 12 91

NIF Q-0818001-J

Barcelona 19 de enero de 2008

<u>Apéndice A</u>. Recortes de las etiquetas de las tres cajas y códigos de barras de cada una de ellas











UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal.lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 84
Fax 93 402 12 91

NIF Q-0818001-J

## Apéndice B. Detalle de los análisis TGA:





Facultat de Química
Departament d'Enginyeria Química i Metal.lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J





Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franquès, 1
08028 Barcelona
Tel 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J

Apéndice C. Detalle de los análisis DSC:





UNIVERSITAT DE BARCELONA

Facultat de Química
Departament d'Enginyeria Química i Metal·lúrgia

Martí i Franqués, 1
08028 Barcelona
Tel 93 402 12 88
Fax 93 402 12 91

NIF Q-0818001-J



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

QUICK CUISINE AG,

Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

Defendants.

---

Case No.:  08-CV-1601
(Lynch, J.) (Francis, M.J.)

*CERTIFICATION OF*
*FATIMA SINER*

Fatima Siner, of full age and being sworn upon here oath certifies as follows:

1.    I am the President of UB2B, Inc. (hereinafter "UB2B").

2.    UB2B is corporation organized and existing under the laws of the State of New Jersey.

3.    UB2B maintains its principal place of business at 463 Barell Avenue, Carlstadt, New Jersey.

4.    UB2B is engaged in the business of distributing and selling consumer products to wholesalers and retailers.

5.    UB2B has no place of business or operations in the State of New York.

6.    UB2B has no telephone number, warehouse, showroom, property, bank account, employees or other such connections within the State of New York.

7.    UB2B does not does not regularly solicit business in the State of New York.

8.    UB2B does not have any agents in the State of New York.

9.    UB2B never attended any dinner engagements with the plaintiff in New York.

10.    The only dinner engagement with plaintiff was at Gianna's Restaurant located in Carlstadt, New Jersey.

11.    The primary means of communication and activity between the parties in this case took place by electronic mail ("e-mail") or by telephone between New Jersey and Switzerland.

12.    UB2B does not engage in any continuous, permanent, or substantial activity in the State

of New York.

13.    Nearly all the negotiations concerning the transaction between Plaintiff and Defendants were conducted via e-mail or by telephone between New Jersey and Switzerland.

14.    Any business meetings conducted in person concerning the underlying transaction were held in Carlstadt, New Jersey.

15.    UB2B did not conduct any business meetings concerning the underlying transaction in the State of New York.

16.    Upon information and belief, UB2B was not served with the Order to Show Cause.

17.    Upon information and belief, UB2B was not served with the Affidavit of Judgment by Default.

18.    Upon information and belief, UB2B was not served with the default judgment.

19.    Upon learning of the default judgment, UB2B immediately began the process of retaining counsel.

20.    This certification is offered in support of UB2B's motion to vacate default judgment pursuant to FRCP 60(b) and to dismiss the Plaintiff's Complaint for lack of personal jurisdiction pursuant to FRCP 12(b)(2).

I certify that the foregoing statements made by me are true to the best of my knowledge.  I am aware that if any of the statements made by me are willfully false, I am subject to punishment.


By:_____
                    UB2B, Inc.
                    Fatima Siner, President


Dated: August 11, 2008

*00981109*

{00981109.DOC;1 }

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

QUICK CUISINE AG,

                         Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                         Defendants.

Case No.: 08-CV-1601
(Lynch, J.) (Francis, M.J.)

*CERTIFICATION OF*
*GUS EBEN*

---

Gus Eben, of full age and being sworn upon here oath certifies as follows:

1.      I am the Chief Executive Officer of CMA Trading, Inc. (hereinafter "CMA Trading").

2.      CMA Trading maintains offices at 89 Longview Drive, Emerson, New Jersey 07630 USA with a mailing address of 297-101 Kinderkamack Road, Oradell, New Jersey 07649 USA.

3.      CMA Trading is engaged in the business of distributing and selling merchandise, including food to distributors, wholesalers, retailers and government agencies.

4.      CMA Trading has no place of business or operations in the State of New York.

5.      CMA Trading has no telephone number, warehouse, showroom, property, bank account, employees or other such connections within the State of New York.

6.      CMA Trading does not regularly solicit business in the State of New York.

7.      CMA Trading does not have any agents in the State of New York.

8.      The primary means of communication and activity between the parties in this case took place by electronic mail ("e-mail") or by telephone between New Jersey and Switzerland.

9.      CMA Trading does not engage in any continuous, permanent, or substantial activity in the State of New York.

10.      Most of the negotiations concerning the transaction between Plaintiff and Defendants

{00979087.DOC;1}

were conducted via e-mail or by telephone between New Jersey and Switzerland.

11.     Any business meetings conducted in-person concerning the underlying transaction were held in Carlstadt, New Jersey.

12.     I personally attended one meeting in Carlstadt, New Jersey.

13.     CMA Trading did not conduct any business meetings concerning the underlying transaction in the State of New York.

14.     During negotiations for the underlying transaction, the only event that took place in New York was a social dinner engagement I attended with Nicky Sevin of Quick Cuisine.

15.     The restaurant was located next to the hotel where Mr. Sevin was staying in New York City.

16.     This certification is offered in support of CMA Trading's Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to FRCP 12(b)(2).

I certify that the foregoing statements made by me are true to the best of my knowledge.  I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

By: _____
CMA Trading, Inc.
Gus Eben, CEO

Dated: _____

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

QUICK CUISINE AG,

                              Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                              Defendants.

Case No.:  08-CV-1601
(Lynch, J.) (Francis, M.J.)

***CERTIFICATION OF
ULISES SABATO***

Ulises Sabato, of full age and being sworn upon here oath certifies as follows:

1.      I am the President of Universal Food Trading (hereinafter "Universal").

2.      Universal maintains its principal place of business at 463 Barell Avenue, Carlstadt, New Jersey.

3.      Universal is engaged in the business of distributing and selling merchandise, including food, to wholesalers and retailers.

4.      Universal has no place of business or operations in the State of New York.

5.      Universal has no telephone number, warehouse, showroom, property, bank account, employees or other such connections within the State of New York.

6.      Universal does not does not regularly solicit business in the State of New York.

7.      Universal does not have any agents in the State of New York.

8.      The primary means of communication and activity between the parties in this case took place by electronic mail ("e-mail") or by telephone between New Jersey and Switzerland.

9.      Universal does not engage in any continuous, permanent, or substantial activity in the State of New York.

10.      Most of the negotiations concerning the transaction between Plaintiff and Defendants were conducted via e-mail or by telephone between New Jersey and Switzerland.

11.      Any business meetings conducted in person concerning the underlying transaction were

held in Carlstadt, New Jersey.

      12.    Universal did not conduct any business meetings concerning the underlying transaction in the State of New York.

      13.    Universal never met with Quick Cuisine representatives in New York; however, I did visit one of Quick Cuisine's packing facilities in Lille, France.

      14.    Upon information and belief, Universal was not served with the Complaint in this matter.

      15.    Upon information and belief, Universal was not served with the Order to Show Cause.

      16.    Upon information and belief, Universal was not served with the Affidavit for Judgment by Default in this litigation.

      17.    Upon information and belief, Universal was not served with the Default Judgment.

      18.    Upon learning of the default judgment, Universal immediately began the process of retaining counsel.

      19.    This certification is offered in support of Universal's motion to vacate default judgment pursuant to FRCP 60(b) and to dismiss the Plaintiff's Complaint for lack of personal jurisdiction pursuant to FRCP 12(b)(2).

      I certify that the foregoing statements made by me are true to the best of my knowledge.  I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

By:_____
     Universal Food Trading
     Ulises Sabato

Dated:___8|8|08___
00976669

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

QUICK CUISINE AG,

                      Plaintiff,

v.

UB2B INC., CMA TRADING, INC. and
UNIVERSAL FOOD TRADING,

                      Defendants.

Case No. 08-CV-1601  (GEL)
(Lynch, J.) (Francis, M.J.)

**F.R.C.P. 7.1 STATEMENT**

---

Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9], and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualifications or recusal, the undersigned counsel for underdefendant, CMA Trading, Inc., (a private non-governmental party), certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held:  NONE.

SCHENCK, PRICE, SMITH & KING, LLP


  /s/ John P. Campbell (JC-8746)
John P. Campbell (JC-8746)
305 Broadway, Suite 900
New York, New York 10007
(212) 822-1494
Attorneys for Defendant, CMA Trading, Inc.

Dated:  August 20, 2008.

JAK/#980941

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

QUICK CUISINE AG,

                              Plaintiff,

v.

UB2B INC., CMA TRADING, INC. and
UNIVERSAL FOOD TRADING,

                              Defendants.

---

Case No. 08-CV-1601  (GEL)
(Lynch, J.) (Francis, M.J.)


## F.R.C.P. 7.1 STATEMENT


Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9], and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualifications or recusal, the undersigned counsel for <u>defendant, UB2B, Inc.,</u> (a private non-governmental party), certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held: NONE.

SCHENCK, PRICE, SMITH & KING, LLP


  _/s/ John P. Campbell (JC-8746)_____
John P. Campbell (JC-8746)
305 Broadway, Suite 900
New York, New York 10007
(212) 822-1494
Attorneys for Defendant, UB2B, Inc.

Dated:  August 20, 2008.

JAK #980941

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

QUICK CUISINE AG,

                          Plaintiff,               Case No. 08-CV-1601  (GEL)
                                                   (Lynch, J.) (Francis, M.J.)

v.

UB2B INC., CMA TRADING, INC. and                   **F.R.C.P. 7.1 STATEMENT**
UNIVERSAL FOOD TRADING,

                          Defendants.

_____

    Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9], and to enable

District Judges and Magistrate Judges of the Court to evaluate possible disqualifications or recusal, the

undersigned counsel for <u>defendant, Universal Food Trading,</u> (a private non-governmental party),

certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are

publicly held:  NONE.

                          SCHENCK, PRICE, SMITH & KING, LLP


                            _/s/ John P. Campbell (JC-8746)_____
                          John P. Campbell (JC-8746)
                          305 Broadway, Suite 900
                          New York, New York 10007
                          (212) 822-1494
                          Attorneys for Defendant, Universal Food Trading

Dated:  August 20, 2008.

JAK #980941

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

QUICK CUISINE AG,

                            Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                           Defendants.

Case No.:  08-CV-1601
(Lynch, J.) (Francis, M.J.)


**ORDER**

---

THIS MATTER having been brought before the Court by Schenck, Price, Smith & King, LLP, attorneys for the defendants, UB2B Inc., CMA Trading Inc., and Universal Food Trading ("defendants"), for an Order vacating Default Judgment entered against UB2B, Inc. and Universal Food Trading pursuant to <u>F.R.C.P.</u> 60(b), and to Dismiss Plaintiff's Complaint as to all defendants for lack of personal jurisdiction pursuant to <u>F.R.C.P.</u> 12(b)(2), and the Court having considered the papers filed in this action, heard oral argument, and for good cause shown;

IT IS on this _____ day of _____, 2008

ORDERED that the default judgments entered against the defendants, UB2B, Inc. and Universal Foot Trading, be and the same hereby are vacated; and it is

FURTHER ORDERED that Plaintiff's Complaint be and the same is hereby dismissed as to all defendants; and it is

FURTHER ORDERED that a copy of the within Order shall be served upon all parties within _____ days from the date hereof.

                                          _____
                                                 U.S.D.J.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

QUICK CUISINE AG,

                      Plaintiff,

v.

UB2B INC., CMA TRADING INC., and
UNIVERSAL FOOD TRADING,

                      Defendants.

Case No.: 08-CV-1601
(Lynch, J.) (Francis, M.J.)

*CERTIFICATION OF*
*MICHAEL J. MAROTTE*

Michael J. Marotte, of full age and being sworn upon here oath certifies as follows:

1.      I am an Attorney at Law of the State of New York and a member of the law firm of Schenck, Price, Smith & King, LLP and am entrusted with the handling of this matter on behalf of Defendants, and, as such, I am fully familiar with the facts set forth herein.

2.      During the week of April 21, 2008, I personally contacted Plaintiff's counsel and requested Plaintiff's consent to vacate the default judgment entered against UB2B, Inc. and Universal Food Trading.

3.      Plaintiff's counsel denied this request.

4.      Attached hereto as Exhibit 1 is a true and accurate copy of the Complaint filed in this matter.

5.      Attached hereto as Exhibit 2 is a true and accurate copy of the Order to Show Cause filed in this matter.

6.      Attached hereto as Exhibit 3 is a true and accurate copy of the Affidavit for Judgment by Default filed in this matter.

7.      Attached hereto as Exhibit 4 is a true and accurate copy of the unsigned Letter of Intent.

{00977824.DOC.1 }

8.    Attached hereto as Exhibit 5 is a true and accurate copy of the expert report of Professor Joan Llorens Llacuna in this matter.

I certify that the foregoing statements made by me are true to the best of my knowledge. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

By: _____
                Michael J. Marotte

Dated: August 21, 2008

*00977824*

{00977824.DOC;1 }